**Thomas N. FEATHERINGILL,**
**Petitioner,**

v.

**OFFICE OF PERSONNEL**
**MANAGEMENT,**
**Respondent.**

**No. 03–3091.**

United States Court of Appeals,
Federal Circuit.

June 6, 2003.

Before LOURIE, RADER, and DYK, Circuit Judges.

PER CURIAM.

Thomas Featheringill appeals from the Merit Systems Protection Board's affirmance of the Office of Personnel Management's November 27, 2001 decision denying his request to waive recovery of annuity overpayments. *Featheringill v. Office of Pers. Mgmt.,* 93 M.S.P.R. 301, No. CH–831M–02–0208–I–1 (M.S.P.B.

Oct.11, 2002) (*Featheringill IV*). We *affirm*.

## BACKGROUND

On March 13, 1981, while employed by the Federal Aviation Administration ("FAA"), Mr. Featheringill elected Basic Life Insurance and three optional life insurance benefits ("Options A, B, and C") under the Federal Employees Group Life Insurance ("FEGLI") program. By signing the election form, he agreed to have the FEGLI premiums withheld from his salary. Effective August 4, 1984, Featheringill voluntarily retired from government service without any reduction in his life insurance coverage. He then began receiving Civil Service Retirement annuity benefits, subject to withholding by the Office of Personnel Management ("OPM") for the FEGLI premiums pursuant to subsections a(d)(1), b(d)(1), and c(d)(1) of 5 U.S.C. § 8714. On the day his retirement was effective, however, Featheringill apparently returned to work as a part-time air traffic controller. Several months later, he informed the OPM that FEGLI premiums were being withheld from both his salary and his annuity payments. The OPM consequently stopped withholding the premiums from Featheringill's annuity, and later refunded to him certain premiums that had been improperly withheld. On May 21, 1985, Featheringill advised the OPM that he was no longer working and that the deduction of life insurance premiums should again be made from his annuity.

On April 18, 2000, in response to an inquiry that Featheringill made regarding his Option B insurance coverage, the OPM notified him that it had discovered that his Option B and C insurance plans had not been reinstated after his reemployment ended in 1985. Because Featheringill had elected "No Reduction" in coverage, however, the OPM indicated that it had reinstated both of those insurance plans. The OPM then explained that, because the premiums for those plans had not been withheld from Featheringill's annuity payments for the approximately fifteen years since his retirement, he had been overpaid by $24,784.58 attributable to Option B insurance premiums and $660.68 attributable to Option C premiums. The OPM then stated that it would withhold $688.46 per month from Featheringill's annuity for the next thirty-six months to repay the first amount, and $261.30 per month for two months to repay the second.

Featheringill subsequently requested reconsideration, and there then followed a series of decisions from the OPM and appeals to the Board, *Featheringill v. Office of Pers. Mgmt.*, No. CH–831M–00–0830–I–1 (M.S.P.B. Dec.4, 2000) (*Featheringill I*); *Featheringill v. Office of Pers. Mgmt.*, No. CH–831M–00–0830–I–1, 2001 WL 1090155 (M.S.P.B. Sept.12, 2001) (*Featheringill II*); *Featheringill v. Office of Pers. Mgmt.*, No. CH–831M–02–0208–I–1 (M.S.P.B. June 28, 2002) (*Featheringill III*); and *Featheringill IV*, culminating in the OPM finding and the Board affirming that (1) Featheringill was "without fault" in receiving the overpayments; (2) the OPM was barred by a statute of limitations from recovering overpayments made prior to December 1, 1992; and (3) that it would not be "against equity and good conscience" for the OPM to recover the $18,486.39 overpayment attributable to Option B premiums and $475.27 overpayment attributable to Option C premiums paid on or after December 1, 1992, based on findings that Featheringill had reported investments valued at $220,000, other liquid assets of $8550, and monthly income in excess of expenditures, not including investment income, of $172. A revised repayment schedule was set up, consisting of

110 monthly installments of $167.00 and one installment of $116.39, in repayment of the Option B premiums; and forty-six installments of $4.25 and one installment of $1.72, in partial repayment of the Option C premiums.[1]

Featheringill timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Congress has expressly limited the scope of our review in an appeal from the Board. Specifically, we must affirm the Board's decision unless it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000). "Under the substantial evidence standard of review, a court will not overturn an agency decision if it is supported by 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Jacobs v. Dep't of Justice*, 35 F.3d 1543, 1546 (Fed.Cir.1994) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

On appeal, Featheringill argues that the Board failed to give proper consideration (1) to the fact that the administrative judge ("AJ") in *Featheringill I* found him to be without fault, (2) to the decline in the value of his investments after September 11, 2001, and (3) to his health condition and lack of earning power at his present age. He also challenges the findings of the AJ in *Featheringill III* that his claimed expenses exceeded reasonable, necessary, and ordinary living expenses.

Featheringill's arguments are unpersuasive. First, the record clearly indicates that the Board fully considered the implications of the first AJ's determination that Featheringill was without fault. That determination was the basis for the OPM's reduction in the amount that Featheringill would need to repay in its November 27, 2001 remand decision. It was also the basis for the full Board's instructions to the OPM in *Featheringill II* to consider on remand only whether recovery of the overpayment would be "against equity and good conscience," and not to revisit the question of fault. The OPM properly carried out those instructions.

Because Featheringill does not deny the validity of or challenge the amount of the overpayment – indeed, he concedes the existence of the overpayment in his reply brief – the only issue before us is whether the Board erred in concluding that Featheringill is not entitled to a waiver. Moreover, because the AJ in *Featheringill I* determined that Featheringill was without fault, the relevant question is simply whether Featheringill established by substantial evidence that recovery of the overpayment would be against equity and good conscience. The OPM, and subsequently the Board, concluded that recovery would not be against equity and good conscience, on the basis of its findings that (1) Featheringill had $220,000 invested in mutual funds, and (2) Featheringill's monthly income exceeded his expenses by at least $172.[2] Those two findings constitute sub-

---

1. We note that forty-six payments of $4.25 and one payment of $1.72 adds up to only $197.22, rather than full $475.27 that the Board concluded that Featheringill is responsible for remitting for the Option C premiums.

2. The AJ in *Featheringill III* also pointed out that Featheringill's income may actually exceed his expenses by more than the $172 that he reported, due to earnings from his investments. Featheringill defied the AJ's order to list that income. *Featheringill III*, slip op. at

stantial evidence supporting the Board's decision. As the AJ in Featheringill's third appeal pointed out, Featheringill could repay his entire debt with just a small portion of his liquid assets, and that fact alone disqualifies him from receiving a waiver, *Featheringill III*, slip op. at 3. Moreover, even disregarding Featheringill's mutual fund investments altogether, because Featheringill's monthly income in excess of his expenses is greater than the $167 monthly installments required by the repayment schedule established by the OPM, it is clear that repayment would not present a "financial hardship" as that term is used in the regulations. Accordingly, the Board did not err in concluding that recovery of the overpayments would not be "against equity and good conscience."

While Featheringill's investments may in fact have declined in value after September 11, 2001, as he asserts, the Board found that Featheringill's income in excess of his expenses exceeds the required monthly installments set by the OPM, and Featheringill may not have to invade his mutual fund assets in order to make the monthly payments.[3] *Id.* Although we are sympathetic to Featheringill's asserted health condition and lack of earning power, his assets and income preclude his being entitled to a waiver.

We have considered Featheringill's other arguments and find them unpersuasive.

### CONCLUSION

The Board's decision affirming the OPM's denial of waiver was supported by substantial evidence; was not obtained without any procedures required by any law, rule, or regulation having been followed; and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. The Board's decision is therefore affirmed.

---

3–4. In any event, because $172 is greater than $167, substantial evidence supports the AJ's conclusions that Featheringill had "more than enough income to pay OPM even without touching his liquid mutual funds or cutting back on luxuries," and that "there is no basis for a waiver or adjustment of OPM's repayment schedule." *Id.* at 4.

**3.** The record also reflects that Featheringill made the same argument to the Board; he was ordered by the AJ to present an updated listing of his investments, but failed to do so. *Featheringill III*, slip op. at 3.